

**Berryman**

426 N.W. 5TH
Oklahoma City, OK  73102
Off: (405) 235-4646
Fax: (405) 235-3311
Email:  mberryman@berrymanokc.com

September 9, 2014

Andrew Gunn
Durbin, Larimore and Bialick
920 North Harvey
Oklahoma City, OK  73102

Re:   Tyler Cole v. Shelter Mutual Insurance Company
      Case No. CIV-13-1178-M
      United States District Court for the Western
      District of Oklahoma

Dear Mr. Gunn:

The following report details to date my pertinent observations, opinions and conclusions related thereto and can be changed only in writing by the undersigned.  My opinions are based upon my review of the documentation provided to me.  In forming my opinions I utilized my thirty-six (36) years of experience as a construction general contractor as well as my formal education, training and knowledge previously acquired.  I understand that discovery is in progress and that I will be allowed to make an inspection of the site in the near future.  I reserve the right to supplement this report to address additional information made available to me and to provide illustrative exhibits at a later date.

I have been a general contractor since 1978 and have performed numerous property restoration projects for owners whose building structures have sustained damages caused by high winds, hail and water intrusion.  I routinely examine structures for the presence, extent and cause of sustained damages.  In the regular course of business I outline the scope of restoration work and submit construction proposals to the public.  I interface with insurance



EXHIBIT 1

industry professionals and have developed a keen understanding of industry standards pertaining to the restoration of damaged real property.

I have reviewed the following documents in this matter:

## Documents Reviewed

1) Shelter documents; Bates # Shelter 1-165
2) Graco documents; Bates # Graco 1-36
3) Accurate documents
4) Cornerstone documents; Bates # Cornerstone 001-020
5) Mortgage appraisal documents; Bates # Mortgage Appr 001-052
6) Sean Arrington deposition taken 8/14/14
7) Camelot documents; Bate # Camelot 001
8) Tyler Cole deposition taken 7/28/14
9) Nicholas Best deposition taken 8/19/14

## Background

1.1   Tyler Cole claimed that his home, located at 918 West Kyle Way, Mustang, Oklahoma suffered damages as a result of the storm activity.
1.2   The subject residence was a single level home with a masonry veneer and a 3-tab asphalt composition shingle roof system.
1.3   He filed a property insurance claim with Shelter Mutual Insurance Company (Shelter) under the Policy #35-73-8054441-2.  Shelter assigned the claim #DW0000001069583 and inspected the residence on June 16, 2013.
1.4   Shelter found damages that were limited to roof appurtenances, downspouts, exterior wood trim and a fence gate.  An $880.42 damage estimate was written by Shelter adjuster, Sean Arrington.
1.5   Arrington observed no wind or hail damage to the 3-tab asphalt roof shingles; however, he did detect some unsealed shingle tabs.  He also noted inconsistencies in the shingles' installation that included misplaced nails, an inadequate number of shingle nails per shingle, canted nails as well as underdriven nails and overdriven nails.
1.6   Arrington noted worn neoprene vents-thru-roof that were allowing water into the interior of the residence.
1.7   At Cole's request, Shelter adjuster, Nicholas Best, conducted a re-inspection of the property on 6/23/13 but found no additional damage beyond that damage identified by Arrington.

1.8   Grayco Roofing and Construction (Grayco) provided a $9,917.11 estimate, dated 7/23/13, that included the removal/replacement of the roof system, roof appurtenances, gutters, screens and interior work.

### Summary and Basis of Opinions

I have formed the following opinions in this matter:

***Opinion #1: Based on the file documentation I have reviewed, the storm damages to the subject home were limited to: a wind damaged fence gate and wood gable; and, hail damaged downspouts, roof turbine vents and an exhaust vent cap. The roof shingles were not damaged by hail.***

1.1  The photographs taken by the Shelter adjusters reveal minor indentation at light gauge metal appurtenances, such as downspouts and roof turbine vents. The deformations are evidence of small size hail impact, only.
1.2  Although these elements show light deformation, said deformation is cosmetic only as their lifespan, performance and functionality appears not to have been compromised.
1.3  Much more often than not, small size hail is not large enough to cause damage to a three tab asphalt roof shingle.
1.4  Hail damage markers are absent on the shingles. There is no indication of bruising or puncturing on the shingle tabs nor is there any indication that the reinforcing shingle mat is ruptured. There is no exposure of the shingle bitumen (black asphalt).

***Opinion #2: The shingles have been improperly installed. The improper installation was a contributor to the shingle tabs not sealing and/or not sealing properly when the roof was originally installed.***

2.1 File documentation indicates improper nailing of the shingles. The inconsistencies include: fewer nails than required by industry standard, improperly placed nails, canted nails, overdriven nails and underdriven nails. The following diagram reveals some of the characteristics of proper and improper nailing of asphalt shingles and what has been observed at the subject residence:



2.2 Overdriven and underdriven nails can either prevent a shingle tab from sealing or cause the shingle tab to only partially seal. "Under driven" nails position the head of the nail in such a manner that it can cause undulations in the surface of the shingle which covers it.

***Opinion #3: Although age, wear and exposure of the roof shingles to typical weather elements may have exacerbated the partial or full detachment of a shingle tab over time, the shingle tabs were not detached by wind.***

3.1 Many of the loosen tabs together formed a diagonal pattern and this is inconsistent with the effects of wind forces on an asphalt shingle roof system. Wind forces affect the vast majority of the shingle tabs in the field area indiscriminately; hence, when damages do occur there is rarely a discernible pattern established.

3.2 Wind forces that are sufficient to forcefully break the seal of a properly installed shingle are, more often than not, sufficient to crease, rip or completely tear off a shingle tab.

3.3 Wind damage markers are absent on the shingles. There are no missing shingles and no broken single tabs. There are no partially ripped or creased shingle tabs.

***Opinion #4: The estimate submitted by Grayco is excessive and goes well beyond what will be required to restore the storm damages to the subject property.***

4.1 The estimate provides for the full removal and replacement of the asphalt roof system. This appears to be unnecessary due to storm activity or for any other reason.

4.2 The estimate includes the removal and replacement of vent-through-roof flashings, which although in need of replacement due to age and wear, were not storm damaged.

4.3 Similarly, the estimate includes the repair of some interior damages that likely occurred prior to the date of loss. There is evidence that the vent-through-roof flashings had reached the end of their serviceable life and had been previously patched.

*******************************************************************************

I understand that discovery is in progress and this report is subject to modification after my site visit or should other additional information be made available to me. Please find attached as a part of this report my current Curriculum Vitae which lists publications I have authored during the last ten (10) years and all cases in which I have given testimony, both at deposition and trial, over the last four (4) years. It establishes my qualifications and my compensation.

Sincerely,

Michael J. Berryman
BERRYMAN ENTERPRISES, INC.

14-09-01E.Report