IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

TYLER COLE, an individual, )
)
      Plaintiff, )
)
v. ) Case No. CIV-13-1178-M
)
SHELTER MUTUAL INSURANCE )
COMPANY, a foreign insurance )
company, )
)
      Defendant. )

# ORDER

This case is scheduled for trial on the Court's October 2014 trial docket.

Before the Court is Defendant Shelter Mutual Insurance Company's Motion for Summary Judgment on Bad Faith and Punitive Damages, filed August 1, 2014. On September 2, 2014, plaintiff responded, and on September 22, 2014, defendant replied[1].

## I.    Introduction

On or about August 26, 2012, plaintiff was issued a Dwelling Insurance Policy by defendant for purposes of insuring plaintiff's residence. On or about May 31, 2013, plaintiff alleges his home sustained a direct physical loss caused by a wind and hail storm. On June 9, 2013, plaintiff contacted defendant and reported the alleged damage from the storm. On June 16, 2013, defendant's adjuster Sean Arrington ("Arrington") inspected plaintiff's roof. Plaintiff

---

[1] On September 24, 2014, plaintiff filed a Motion to Strike Defendant's Reply in Support of Summary Judgment or, in the Alternative, Motion for Leave to File Sur-Reply [docket no. 73]. On September 30, 2014, defendant responded to plaintiff's motion to strike. In reviewing plaintiff's motion to strike and defendant's response, the Court finds that its ruling on defendant's motion for summary judgment can be made independent of defendant's reply. The Court will only consider defendant's motion for summary judgment and plaintiff's response. Therefore, the Court finds plaintiff's motion to strike is moot.

1

requested that Ted Webb ("Webb"), owner of Camelot Roofing, be present on plaintiff's behalf to observe Arrington's inspection of the roof.[2] After inspecting plaintiff's roof, Arrington told plaintiff that the damage was not due to wind and hail, but was due to poor workmanship issues and was excluded by the policy.

Following the initial inspection, plaintiff contacted defendant and requested a second adjuster come out and inspect his roof. On June 23, 2013, defendant's adjuster Nicholas Best ("Best") re-inspected plaintiff's roof and made the same determination as Arrington. In July of 2013, plaintiff had an independent roofer come and inspect his roof. The independent roofer's opinion as to the roof damage contradicted that of Arrington and Best.

On October 23, 2013, without notifying defendant of the independent roofer's contradictory opinion, plaintiff filed the instant action claiming defendant breached its contract with plaintiff and acted in bad faith in handling his insurance claims. Defendant now moves this Court pursuant to Federal Rule of Civil Procedure 56 for summary judgment as to plaintiff's claims of bad faith and punitive damages against defendant.

II.     Summary Judgment Standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

---

[2] Webb accompanied Arrington on plaintiff's roof for the inspection.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III.    Discussion

   A.    Bad Faith Claim

The Oklahoma Supreme Court first recognized the tort of bad faith by an insurer in the case of *Christian v. Am. Home Assurance Co.*, 577 P.2d 899 (Okla. 1978). In so doing, the court held that "an insurer has an implied duty to deal fairly and act in good faith with its insured and that the violation of this duty gives rise to an action in tort for which consequential and, in a proper case, punitive, damages may be sought." *Id.* at 904. The court further recognized:

> there can be disagreements between insurer and insured on a variety of matters such as insurable interest, extent of coverage, cause of loss, amount of loss, or breach of policy conditions. Resort to a judicial forum is not per se bad faith or unfair dealing on the part of the insurer regardless of the outcome of the suit. Rather, tort liability may be imposed only where there is a clear showing that the insurer unreasonably, and in bad faith, withholds payment of the claim of its insured.

*Id.* at 905.

In order to establish a bad faith claim, an insured "must present evidence from which a reasonable jury could conclude that the insurer did not have a reasonable good faith belief for withholding payment of the insured's claim." *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1436 (10th Cir. 1993). In order to determine whether the insurer acted in good faith, the

insurer's actions must be evaluated in light of the facts the insurer knew or should have known at the time the insured requested the insurer to perform its contractual obligation. *Id.* at 1437. The essence of the tort of bad faith is

> unreasonable, bad-faith conduct, including the unjustified withholding of payment due under a policy, and if there is conflicting evidence from which different inferences might be drawn regarding the reasonableness of insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case.

*McCorkle v. Great Atl. Ins. Co.*, 637 P.2d 583, 587 (Okla. 1981).

However, the mere allegation that an insurer breached its duty of good faith and fair dealing does not automatically entitle the issue to be submitted to a jury for determination. *Oulds*, 6 F.3d at 1436. The Tenth Circuit has held:

> [a] jury question arises only where the relevant facts are in dispute or where the undisputed facts permit differing inferences as to the reasonableness and good faith of the insurer's conduct. On a motion for summary judgment, the trial court must first determine, under the facts of the particular case and as a matter of law, whether insurer's conduct may be reasonably perceived as tortious. Until the facts, when construed most favorably against the insurer, have established what might reasonably be perceived as tortious conduct on the part of the insurer, the legal gate to submission of the issue to the jury remains closed.

*Id.* at 1436-37 (internal citations omitted).

"A claim must be paid promptly unless the insurer has a reasonable belief that the claim is legally or factually insufficient." *Willis v. Midland Risk Ins. Co.*, 42 F.3d 607, 611-12 (10th Cir. 1994). "To determine the validity of the claim, the insurer must conduct an investigation reasonably appropriate under the circumstances. If the insurer fails to conduct an adequate investigation of a claim, its belief that the claim is insufficient may not be reasonable." *Id*. at

4

612 (internal quotations and citation omitted). Thus, "[t]he investigation of a claim may in some circumstances permit one to reasonably conclude that the insurer has acted in bad faith." *Oulds*, 6 F.3d at 1442.

The Court has carefully reviewed the parties' briefs and evidentiary submissions. Viewing the evidence in the light most favorable to plaintiff and viewing all reasonable inferences in plaintiff's favor, as the Court must when addressing a motion for summary judgment, the Court finds that plaintiff has not presented sufficient evidence to create a genuine issue of material fact as to whether defendant acted in bad faith and violated its duty to deal fairly and act in good faith with plaintiff. On June 16, 2013, Arrington inspected plaintiff's roof. Webb accompanied Arrington on the roof for the inspection. After the inspection Arrington advised plaintiff that "there was no significant hail damage to the shingles and the issues with the roof were caused by poor installation and worn pipe boots, and his estimate was under the [p]laintiff's deductible." Def.'s Mot. for Sum. J. at 8 ¶ 4. Defendant contends that Webb agreed with Arrington's opinion about plaintiff's roof (*See id.* at ¶ 5); however, plaintiff asserts that Webb denies he concurred.[3] Plf.'s Resp. at 5. Webb, in his declaration, stated that, "I do not recall if I expressed my conclusions with the Shelter Adjuster nor to Mr. Cole." Plf.'s Resp. Ex. 4 Declaration of Ted Webb ¶ 11. The Court finds that while Webb's concurrence may be in

---

[3] Defendant in its motion for summary judgment represented to the Court as an undisputed fact that Webb had agreed with Arrington at the time that plaintiff's roof damages were due to improper workmanship. *See* Def.'s Mot. for Summ. J. at 8 ¶ 5. However, plaintiff, in its response included a Declaration from Ted Webb, in which Webb denied agreeing with Arrington's opinion. *See* Plf.'s Resp. Ex. 4 Declaration of Ted Webb ¶¶ 10 & 11. Further, Webb stated that he refused to sign an affidavit prepared by defendant "because [Webb] didn't believe the affidavit portrayed the events that took place on June 16, 2014." *Id.* at ¶ 15. While the Court recognizes that defendant was trying to timely file its motion for summary judgment, the Court is troubled by the fact that defendant represented to the Court that Webb agreed with Arrington's opinion without informing the Court that Webb refused to substantiate that fact.

dispute, the central issue in this case as to whether defendant acted in bad faith when it denied plaintiff's claim can be decided regardless of that dispute.

Specifically, the Court finds that plaintiff has not presented sufficient evidence to show that defendant's adjuster Arrington knowingly misrepresented Webb's statements for the purpose of manufacturing a reason to deny plaintiff's claim. Defendant had two adjusters come to plaintiff's home and inspect his roof; both times the adjusters determined that the damage to plaintiff's roof was caused by improper workmanship. While defendant may have stated in its motion that Webb concurred with Arrington's opinion, plaintiff has presented no relevant evidence to show that defendant relied on Webb's concurrence in its decision to deny plaintiff's claim. Defendant asserts that based on plaintiff's policy, "[t]he policy provided coverage for hail and wind damage occurring during the policy period, but did not provide coverage for defects or inadequacies in construction or construction materials."[4] Def.'s Mot. for Summ. J. at 3. Defendant has essentially determined that any damage to plaintiff's roof from the wind/hail storm was a result of the improper workmanship on plaintiff's roof and, therefore, was not covered by the policy. The Court finds that based on both Arrington's and Best's inspection of plaintiff's roof at the time, and regardless of Webb's concurrence, their opinion that plaintiff's roof damage was due to improper workmanship was a reasonable and legitimate basis for denying plaintiff's claim. Further, the fact that plaintiff has a differing opinion about the damage on his roof from an independent roofer is not evidence that defendant acted in bad faith, but is only evidence that there is a legitimate dispute between the parties regarding the damage to

---

[4] Plaintiff asserts in its motion to strike that this argument was a new legal argument presented in defendant's reply; however, the Court finds that defendant makes reference to plaintiff's policy exclusions in its opening brief to its motion for summary judgment on page 3.

plaintiff's roof. Accordingly, the Court finds that defendant is entitled to summary judgment on plaintiff's bad faith claim.

B. Punitive Damages

"The availability of a punitive damage award in a bad-faith case is not automatic, but rather is governed by the standard applicable in other tort cases. The plaintiff must show that the defendant acted with oppression, malice, fraud or gross negligence or wantonness." *Buzzard v. Farmers Ins. Co., Inc.,* 824 P.2d 1105, 1115 (Okla. 1991). *See also Sloan v. State Farm Mut. Auto. Ins. Co.*, 360 F.3d 1220, 1224 (10th Cir. 2004) ("Punitive damages in bad faith cases require a finding . . . that the conduct of the insurance company was in reckless disregard for the interests of the plaintiff, or was based on a dishonest judgment, or was otherwise malicious, willful, or wanton.") (internal citation and quotations omitted). Since the Court has found defendant is entitled to summary judgment on plaintiff's bad faith claim, the Court finds plaintiff's claim for punitive damages fails as a matter of law.

IV. Conclusion

Accordingly, for the reasons set forth above, the Court GRANTS Defendant Shelter Mutual Insurance Company's Motion for Summary Judgment on Bad Faith and Punitive Damages [docket no. 28].

**IT IS SO ORDERED this 7th day of October, 2014.**

_____
VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE